# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: ) | |
| ) | |
| CEDA MILLS, INC., ) | Bankruptcy Case No. <u>04-24452JAD</u> |
| ) | |
| Debtor. ) | Chapter 11 |
| ──────────────────── X | |
| ROCKLAND CREDIT FINANCE, LLC, ) | |
| ) | |
| Movant, ) | |
| ) | Related To Doc. No. <u>386</u> |
| v. ) | |
| ) | |
| CEDA MILLS, INC., ) | |
| ) | |
| Respondent. ) | |
| ──────────────────── X | |

## ORDER

AND NOW, this 11th day of February, 2009, and the Court having considered the *Motion of Rockland Credit Finance, LLC to Enforce Confirmed Amended Plan of Reorganization and Compel Payment of Claim* (the "Motion to Compel"), the Debtor's opposition thereto, and the record made throughout these proceedings, and in due consideration the Court hereby ORDERS, ADJUDGES, and DECREES that:

1. The Motion to Compel is GRANTED.

2. Within ten (10) days of the date of this Order, the Debtor shall pay Rockland Credit Finance, LLC $124,482.56 in readily available funds

00002966.WPD

plus $11.84 per diem from January 27, 2009 until the date in which final payment is made.

Dated: February 11, 2009

_____
Jeffery A. Deller
United States Bankruptcy Judge

cc:   Robert O Lampl, Esq.
      Joseph Gibbons, Esq.
      Joseph Sisca, Esq., Assistant U.S. Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| CEDA MILLS, INC., | ) | Bankruptcy Case No. 04-24452JAD |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | X | |
| ROCKLAND CREDIT FINANCE, LLC, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| | ) | Related To Doc. No. 386 |
| v. | ) | |
| | ) | |
| CEDA MILLS, INC., | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | X | |

Appearances:    Robert O Lampl, Esq., For Ceda Mills, Inc.
Joseph G. Gibbons, Esq., For Rockland Credit Finance, LLC

**<u>MEMORANDUM OPINION</u>**

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052. The matter before the Court is the *Motion of Rockland Credit Finance, LLC to Enforce Confirmed Amended Plan of Reorganization and Compel Payment of Claim* (the "Motion to Compel"). The Motion to Compel is a core proceeding pursuant to 28 U.S.C.§§ 157(b)(2)(A),(B),(K), (L) and (O) and concerns the Debtor's failure to pay the allowed claim of Rockland Credit Finance, LLC ("Rockland"). This Court has jurisdiction over this matter

00002966.WPD

pursuant to 28 U.S.C. § 1334(b).

The facts of this case are generally undisputed. Those facts include:

1. WebBank, Inc., Rockland's assignor, entered into a Factoring Agreement with the Debtor on or about December 23, 2002. Pursuant to the factoring Agreement, the Debtor granted WebBank a security interest in the Debtor's personal property assets, such as accounts, inventory, goods and other personal property, and all cash and non-cash proceeds (including claims against third-parties) related to the same. See *Factoring Agreement* at ¶ 7. WebBank then filed a UCC-1 Financing Statement to perfect its security interest.

2. Because the Debtor breached its obligations under the Factoring Agreement, WebBank confessed judgment against the Debtor on or about May 30, 2003 in the amount of $67,987.50. Thereafter, WebBank assigned to Rockland all of WebBank's right, title and interest in (a) the Factoring Agreement, including all obligations of the Debtor to WebBank, and (b) the judgment, including the original judgment claim and all interest and other fees accruing after the judgment date.

3. The Debtor filed a Chapter 11 petition for bankruptcy relief on April 2, 2004 (the "Petition Date").

4. On September 7, 2004, Rockland timely filed with the Court a secured *Proof of Claim* at Claim No. 29-1 in the amount $72,000.35, consisting of the amount of its judgment and pre-petition interest. Such sum does not include any interest or attorneys' fees that may have accrued after the filing of this bankruptcy case.

5. In describing the collateral securing its claim, Rockland's proof of claim form stated that its collateral included "all assets excluding real property" and averred that the collateral had a value of "$8,136,000."

6. The Debtor admitted in its *Schedules of Assets and Liabilities* that the value of the Debtor's personal property was $8,136,000. See *Schedule B* (Dkt. #18). Of the personal property scheduled by the Debtor, the Debtor (a) estimated that, as of the Petition Date, the value of its accounts receivable was $95,000 and the value of its machinery, equipment and fixtures was $8,000,000; and (b) scheduled the value of the Debtor's lawsuit against certain insurers as being "unknown."

While the Debtor's Schedules stated that the Debtor had no inventory as of the Petition Date, the Debtor stated in various litigation before this Court that the Debtor owned insurance claims with respect to damaged inventory in the amount of $746,606.76 for 'Steel Coils Replacement, CMI Inventory" and $210,000.00 for "Steel Rolls Repairs Inventory." See e.g., Complaint (Adversary No. 05-2919-JAD; Dkt. #1) at ¶ 36; see also Amended Complaint (Adversary No. 04-2773-JAD; Dkt. #55) at ¶ 36.[1]

7. As documentary support for its Proof of Claim, Rockland attached to Claim No. 29-1 a copy of its UCC-1 Financing Statement and a copy of its confessed judgment. In addition, in response to various proceedings before this Court, Rockland also filed copies of: the Master Factoring Agreement dated December 20, 2002, summaries detailing Rockland's claim calculation, an affidavit of Rockland's portfolio manager (Mr. Philip Moylan) supporting the Rockland claim, and a copy of a proof of assignment of WebBank's interests to Rockland.

8. On or about April 20, 2005, the Debtor filed its Amended Plan of Reorganization along with a Disclosure Statement. (Dkt. ## 115 and 116). The Amended Plan stated that the Debtor's plan was to be funded in this case in large part by any recoveries the Debtor may have had with respect to certain insurance litigation against various insurers.

9. Rockland objected to the Amended Plan, and in connection with plan confirmation the objections were resolved by way of Stipulation that was incorporated into the Confirmation Order dated June 23, 2005. (Dkt. #136).

10. The Stipulation modified the Amended Plan, and provided that the secured claim of Rockland is "Unimpaired" for purposes of this bankruptcy case. (Id.).

11. The Stipulation further provided that the "Allowed Secured Claim of Rockland Credit Finance, LLC, if any, will be paid out of insurance proceeds received by the Debtor. Any amount remaining unpaid after distribution of insurance proceeds will be paid over a period of

---

[1] The Debtor's assets and business were effectively destroyed as a result of a severe rain storm that occurred prior to the Petition Date.

seventy-two (72)months in equal installments." (Id.).

12. The *Amended Plan* confirmed by the Court also provided that general unsecured creditors would be paid the "full amount" of their claims. (Dkt. #115).

13. In terms of the time period to object to claims, the *Amended Plan* expressly set forth that "[t]he Debtor specifically reserves the right to object to any claim, provided such objection is filed not later than forty-five (45) days after the Confirmation Date." (Id.).

14. In addition, the Court's *Post-Confirmation Order and Notice* expressly stated that "[a]ny claim objection shall be served and filed within forty-five (45) days after the effective date of this order." (Dkt. #137). The *Post-Confirmation Order and Notice* also required that "any other adversary proceeding, contested matter, motion or application shall be filed within forty-five (45) days after the effective date of this order." (Id.)

15. Subsequent to confirmation of the *Amended Plan*, the Debtor did not file an objection to the Rockland claim within the forty-five (45) day time period required by the *Amended Plan* and the Court's *Post-Confirmation Order and Notice*.

16. Subsequent to confirmation of the *Amended Plan*, the Debtor elected to liquidate substantially all of its assets. The Debtor also proceeded to liquidate its insurance claims by the continued prosecution and ultimate settlement of them.

17. The result of the liquidation is that the Debtor had, as of approximately October 31, 2006, recovered enough funds, including insurance proceeds, to pay all creditors in full and leave sufficient funds to remit distributions to equity holders. In connection with receipt of such funds, on or about October 31, 2006 the Court required that the Debtor immediately pay all creditors the full amount of their allowed claims.

18. The Debtor, however, did not pay Rockland. Instead, approximately two (2) years after the deadline had passed for objecting to claims, the Debtor filed an objection to Rockland's claim on October 3, 2007. (Dkt. #250).

19. Rockland defended the claims objection by asserting the statute of limitations affirmative defense and by Order dated November 20, 2007, the Debtor's objection was overruled as being untimely. (Dkt. #284). The Debtor then moved for reconsideration of the Court's Order of November 20, 2007. (Dkt. #295).

20. By *Memorandum Opinion and Order* dated June 24, 2008, the Court denied the Debtor's motion for reconsideration. (Dkt. #338). No appeal was taken of the Court's Orders of November 20, 2007 and June 24, 2008, and those proceedings are now final.

21. Sometime in November of 2008, and the exact date is unclear in the record, the Debtor purportedly attempted to remit payment of $72,000.35 to Rockland in satisfaction of all of Rockland's claims, which Rockland allegedly refused to accept. Rockland contended that this proposed payment was insufficient in amount because both the Debtor's previous refusal to pay and continued litigation had caused Rockland to incur additional legal expenses. Rockland asserted that these legal expenses were a part of Rockland's secured claims and were entitled to payment. In addition, Rockland asserted that unpaid interest had accrued on its claim since the filing of the Debtor's bankruptcy case. The Debtor refused to honor these payment requests by Rockland.

22. Because the Debtor had not tendered full payment to Rockland, the creditor filed the instant Motion to Compel on December 23, 2008. The Debtor then filed an objection, and this Court held a hearing on January 27, 2009. During the hearing, it became apparent that the facts of this case are not in dispute. Thereafter, the parties filed supplemental briefs, and this matter is now ripe for decision.

As of the date in which the Court held the hearing on the Motion to Compel, Rockland asserted its claim is equal to $124,482.56, broken down as follows:

$ 72,000.35 . . . Pre-Petition Claim
$ 19,071.61 . . . Post-Petition Interest Thru January 27, 2009
$ 33,410.60 . . . Post-Petition Legal Fees Thru February 5, 2009

$124,482.56 . . . Total

Rockland has also asserted that because its claim remains unpaid, Rockland's

claim continues to accrue interest at the rate of $11.84 per diem until paid in full.

The Debtor opposed Rockland's Motion to Compel, asserting a number of legal theories. Initially, the Debtor attempted to rehash many of the allegations that it had raised in connection with its original objection to the Rockland claim. Specifically, the Debtor averred that somehow the Rockland claim had been paid by the Debtor's own account debtors. However, given the affidavit filed by Rockland reflecting that no such direct payments were received and the internal accounting Rockland produced, the Debtor abandoned this "payment" theory due to the Debtor's inability to substantiate any of its substantive objections to the amounts claimed by Rockland.

Instead, the Debtor has continued to object to Rockland's claim citing alternative legal theories. In this regard, the Debtor has averred that Rockland's collateral is, and has been, worthless and that Rockland is a mere unsecured creditor in this bankruptcy case. According to the Debtor, because Rockland has no real collateral supporting its claim, Rockland is precluded from collecting post-petition interest and attorneys' fees on account of its allowed claim.

Rockland disagrees with the Debtor's analysis. Rockland contends that prior orders of this Court mandate that the Debtor satisfy all of Rockland's claim, including any post-petition interest and attorneys' fees that may have accrued. This Court agrees with Rockland.

The undisputed facts of this case are that by way of the *Stipulation* entered

into between Rockland and the Debtor, and incorporated into this Court's June 23, 2005 *Order Confirming Plan*, Rockland's secured claim was treated as "Unimpaired" by the *Amended Plan*.

The term "impairment" is an important term of art in Chapter 11. If a claim is "impaired," the creditor's legal and contractual rights are altered and the creditor is entitled to vote on the plan. If the claim is "unimpaired," the creditor is not permitted to vote because the plan "leaves unaltered the [creditor's] legal, equitable, and contractual rights." 11 U.S.C. § 1124(1).

In this matter before the Court, the *Amended Plan* contemplated that Rockland's allowed secured claim would be unimpaired, which means that Rockland's legal, equitable, and contractual rights remained unaltered. A *fortiorari* then is that the *Amended Plan* affords Rockland the right to assess attorneys' fees and interest on account of its unpaid claim if either Rockland's contractual documents and/or applicable law permits it to assess such charges against the Debtor.

Applicable law, and the applicable contract, permit Rockland to assess interest and attorneys' fees against the Debtor. With respect to interest, Rockland's claim has been reduced to judgment, and its contract is silent as to interest. Pennsylvania law therefore imposes a legal rate of interest equal to six percent (6%) on Rockland's judgment. See 42 Pa.C.S.A. § 8101; 41 P.S.§ 202; see also Crane Automotive, Inc. v. First Seneca Bank, 98 B.R. 233, 236 (Bankr. W.D.

Pa. 1989). With respect to attorneys' fees, the *Factoring Agreement* entitles Rockland to collect, among other things, "fees, costs and expenses (including but not limited to reasonable attorneys' fees)" incurred by Rockland in connection with "defending or prosecuting any action or proceeding related to this Agreement." See *Factoring Agreement* at § 3.3.

The Debtor contends that the preceding provisions of applicable law and/or contract are inoperative pursuant to 11 U.S.C. § 506. Even though the *Amended Plan* does not impair Rockland's claim, the Debtor contends that the *Amended Plan* is to be ignored and that the Bankruptcy Code statutorily impairs Rockland's claim. Specifically, the Debtor contends that Rockland's collateral is now worthless, and as a result Rockland is not a secured creditor of the Debtor by operation of 11 U.S.C. §§ 506(b) and (d).

The Debtor's analysis misses the mark for a number of reasons, the most obvious of which is that the terms of the *Amended Plan* are binding upon the Debtor. See 11 U.S.C. § 1141(a). Because the *Amended Plan* plainly and unequivocally provides that Rockland's secured claim is unimpaired, the Debtor cannot now at this late hour alter its treatment of Rockland's claim.

Additionally, the *Amended Plan* and this Court's *Post-Confirmation Order and Notice* dated June 24, 2005 set forth a forty-five (45) day time period for the Debtor to file objections to Rockland's claim and/or to file an adversary proceeding challenging the extent, validity, and priority of Rockland's secured claim. Because

the Debtor never timely commenced an action seeking to disallow or void Rockland's secured claim, the Debtor's challenge to Rockland's secured status is time barred regardless of whether 11 U.S.C. § 506 would apply to limit Rockland's claim. See *Memorandum Opinion and Order* dated June 24, 2008 (Dkt. #295).

Citing Stendardo v. Federal Nat'l Mortgage Assoc., 991 F.2d 1089 (3d Cir. 1993) and Youngman v. Fleet Bank, N.A. (In re A&P Diversified Technologies Realty, Inc.), 467 F.3d 337 (3d Cir. 2006), the Debtor also contends that the attorney fee provision of the *Factoring Agreement* is no longer enforceable in light of Rockland's confessed judgment.

What the Debtor fails to recognize is that under applicable law "[a] specific provision of [an agreement] may survive the judgment if the [agreement] clearly evidences an intention by the parties to preserve the effectiveness of that provision." Cardiello v. Casale (In re Phillips Group, Inc.), 382 B.R. 876, 883 (Bankr. W.D. Pa. 2008); see also Stendardo, 991 F.2d at 1095 ("Parties to a mortgage may rely upon a particular provision post-judgment if the mortgagee clearly evidences their intent to preserve the effectiveness of that provision post-judgment.").

In the case before the Court, the *Factoring Agreement* expressly preserves all of Rockland's rights and remedies despite the entry of its judgment. For example, the *Factoring Agreement* provides that:

> Each right, power and remedy provided herein or otherwise existing shall be cumulative and concurrent and shall be in addition to every

other right, power and remedy existing hereunder, by law or otherwise. The exercise by us of any one or more such rights, powers or remedies shall not preclude the simultaneous or later exercise by us of any or all such other rights, powers or remedies.

*Factoring Agreement* at § 9.3.

Under these circumstances, Rockland's confession of judgment does not extinguish Rockland's claim for attorneys' fees. As courts have recognized:

> Between the time of judgment and the time the secured creditor receives payment, the secured creditor may be required to make additional expenditures to protect its security interest and its collateral. The amount of fees asserted in the judgment is not binding where there is an intent to allow the secured creditor to recoup its costs in fully realizing upon its claim. Such costs include defending the claim in bankruptcy proceedings.

Clark Screw Machine Prods. Co., Inc. v. Clark Grind & Polish, Inc. (In re Clark Grind & Polish, Inc.), 137 B.R. 172, 175 (Bankr. W.D. Pa. 1992)(citation omitted).

Even if the Debtor could seek to void Rockland's secured claim pursuant to 11 U.S.C. § 506, the Court notes that such a challenge is without merit. Specifically, Rockland has asserted that the liquidation of the Debtor's assets, and realization of insurance proceeds covering its collateral, rendered Rockland fully secured. The Court agrees.

The undisputed record is that Rockland's lien extended to the Debtor's personal property, including inventory, goods, and products and proceeds relating to the same (including third-party claims). In this case, Debtor filed pleadings asserting insurance claims in the amount of at least $746,606.76 for "Steel Coils Replacement, CMI Inventory" and at least $210,000 for "Steel Rolls Repairs

Inventory." See e.g., Complaint (Adversary No. 05-2919-JAD; Dkt. #1) at ¶ 36; see also Amended Complaint (Adversary No. 04-2773-JAD; Dkt. #55) at ¶ 36.[2] The facts of this case are that the Debtor recovered insurance proceeds in excess of these sums, and therefore it appears that Rockland has always been an oversecured creditor for purposes of 11 U.S.C.§ 506.

Accordingly, under any legal theory, it appears that Rockland's request for post-petition interest and post-petition attorneys' fees is appropriate.[3]

Lastly, the Debtor appears to challenge the reasonableness of the attorneys'

---

[2] These were not the only personal property losses claimed by Ceda Mills to its insurers. For example, the Debtor later amended its insurance claim to include a "Blanket Business Personal Property" claim in the amount of "$5,187,500 less Ceda Mills' salvage value [of between $650,000 and $1,350,000]." See Notice of Claims Pursuant to Order Dated April 10, 2006 (Adversary No. 04-2773-JAD; Dkt. #218) at ¶¶ 1 -4.

[3] The Court notes that even if the Rockland claim is deemed to be wholly unsecured, Rockland would be permitted to add post-petition interest and attorneys' fees to its claim. The Court reaches this conclusion because nothing in the Bankruptcy Code prohibits the inclusion of attorneys' fees from being a part of the claim when such fees are incurred in connection with defending the allowance and payment of the claim in the bankruptcy case. See Ogle v. Fidelity & Deposit Co. Of Maryland, No. 6:08-cv-894, 2009 WL 87598 (N.D.N.Y., Jan. 12, 2009)(citing Travelers Cas. & Sur. Co. Of Am. v. Pac. Gas. & Elec. Co., 127 S.Ct. 1199 (2007)). With respect to post-petition interest, the Court also notes that the Amended Plan states unequivocally that unsecured creditors were to be paid the "full amount" of their allowed claim. See Amended Plan at p. 7. In connection with other proceedings in this bankruptcy case, the Court had required the Debtor to pay such "full amount" immediately given the fact that the Debtor has realized more than enough funds to pay all creditors in full. Courts have held that a promise to make payment "in full" equates to a promise to pay each and every part of the creditor's claim- including interest. See Fawcett v. United States (In re Fawcett), 758 F.2d 588, 591 (11th Cir. 1985)(chapter 13 case); Terex Corp. v. Metropolitan Life Ins. Co. (In re Terex Corp.), 984 F.2d 170, 175 (6th Cir. 1993)(chapter 11 case); United States v. Arrow Air, Inc. (In re Arrow Air, Inc.), 101 B.R. 332, 336 (S.D. Fla. 1989)(chapter 11 case). The Court finds these cases to be persuasive (particularly since there will be a surplus paid to equity holders in this case). As a result the Debtor is barred by the Court's prior orders, including the order confirming the plan, from challenging Rockland's claim for post-petition interest. Case law also suggests that because this case is a "solvent" case, the Debtor would be required to pay interest to the unsecured creditors in any event. See In re Allegheny Int'l, Inc., 118 B.R. 282, 314-315 (Bankr. W.D. Pa. 1990)(noting the "solvent debtor" exception to the disallowance of post-petition interest). For all of these reasons, and under the unique facts and circumstances of this case, it appears that Rockland would be entitled include post-petition attorneys' fees and interest as a part of its unsecured claim as well.

fees claimed by Rockland. The Debtor's reasonableness challenge is without merit.

The attorneys' fees requested as a part of the Rockland claim are nothing but a function of the Debtor's own conduct. The lion's share of Rockland's attorneys' fees were necessitated by the Debtor's unreasonable refusal to honor and pay the Rockland claim. The fact of the matter remains that Rockland incurred its legal fees and expenses by responding and defending the Debtor's untimely claims objection. Only after Rockland successfully defended the claims objection, successfully defended the Debtor's lengthy motion for reconsideration, and filed the instant Motion to Compel, did the Debtor finally acknowledge at the hearing on the Motion to Compel that the Debtor did not have a good basis for objecting to the Rockland claim in the first instance.[4]

Of course, the Debtor's opposition to the Rockland claim did not stop there. After causing Rockland to incur legal expense, the Debtor now at this late hour complains about the fact that Rockland wants to be paid its legal fees as a part of its claim. In addition, despite the fact that virtually all of the Debtor's arguments are barred by the *Amended Plan* and/or other orders of this Court, and despite the fact that the Debtor has long ago realized enough funds to pay all creditors in full and remit a sizeable distribution to equity holders, the Debtor has

---

[4] It appears that the Debtor merely assumed that Rockland had collected the Debtor's accounts receivables. But that assumption had no foundation as the Debtor could not provide counsel with anything to substantiate the assumption.

continued in its fight to avoid paying all of the components of Rockland's claim.

The Debtor's actions have been unreasonable. Rockland should have been paid in full by the Debtor years ago. The Court is surprised that Rockland's fees were not higher given the conduct of the Debtor. Under these circumstances, the Court finds that the attorneys' fees sought by Rockland are more than reasonable.

WHEREFORE, for all of the reasons set forth above, the Court will enter an order which grants the Motion to Compel.

Dated:   February 11, 2009

Jeffery A. Deller
United States Bankruptcy Judge

cc:   Robert O Lampl, Esq.
     Joseph Gibbons, Esq.
     Joseph Sisca, Esq., Assistant U.S. Trustee